IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL CONCRETE PRODUCTS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> THE PIKE COMPANY, INC., <br><br> *Defendant*. | CIVIL ACTION <br> NO. 17-2589 |

PAPPERT, J.                                                                                      January 10, 2018

**MEMORANDUM**

Universal Concrete Products, Inc. seeks a declaration that the dispute resolution provision in its contract with The Pike Company, Inc. is unconscionable and unenforceable. Pike moves to dismiss Universal's Amended Complaint, asking the Court to decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. The Court grants the motion for the reasons that follow.

I

In the spring of 2014, Universal entered into a verbal agreement with Kirchoff-Consigli Construction Management ("K-CC"), the General Contractor for a construction project at Marist College in Poughkeepsie, New York. (Am. Compl. at 2, 5, ECF No. 8.) Specifically, Universal agreed to provide precast concrete services for four buildings on Marist's campus. (*Id*. at 2.) In early 2015, Marist terminated K-CC and hired Pike as the new General Contractor. (*Id*. at 2, 5–6.) Universal subsequently entered into a

subcontract with Pike, which contained a dispute resolution provision ("Article 11"). (*Id.* at 2, 6–7.)

On December 22, 2016, Universal filed a writ of summons against Pike and Marist in the Montgomery County Court of Common Pleas. (*Id.* at 12.) In response, Pike, a Rochester, New York based company, (*id.* at 4), sought to mediate the dispute in Rochester "pursuant to Article 11 and [their] interpretation of the dispute resolution procedures contained in the Subcontract[,]" (*id.* at 12). Universal refused to do so, contending that Article 11's mediation provision is void and unenforceable. (*Id.*) Pike then sued Universal in state court in Monroe County, New York, on May 4, 2017. (*Id.*)

Universal filed this action for declaratory and injunctive relief on June 8, 2017, (Compl., ECF No. 1), and on June 9 removed Pike's Monroe County lawsuit to the United States District Court for the Western District of New York, (Am. Compl. at 13). Also on June 9, Universal filed its complaint against Pike and Marist in the Montgomery County case. (*Id.*) The Montgomery County complaint asserts breach of contract, unjust enrichment, and other claims against Pike for damages allegedly caused by delays and redesign during construction of the Marist project. (*Id.* at 11, 13; Mot. to Dismiss at 4, ECF No. 11.) The complaint made no mention of Article 11, but Pike's Preliminary Objections asserted that the case should be dismissed for Universal's failure to comply with Article 11's dispute resolution process. (Mot. at 4.) Universal then amended its complaint, claiming that Article 11 is "unconscionable and against public policy and, therefore, unenforceable." (Resp. in Opp'n Ex. A, at 4, ECF No. 12-1; Reply at 4, ECF No. 13.)

On August 22, 2017, Pike moved to dismiss the Amended Complaint in this case, arguing that the Court should decline to exercise jurisdiction under the Declaratory Judgment Act. Pike asserts that "[t]his action, seeking declaratory relief with respect to the enforceability of the dispute resolution provisions of the parties' [s]ubcontract, is nothing more (or less) than an attempt by Plaintiff to circumvent pending court proceedings in New York and Pennsylvania in a thinly-veiled effort to secure a ruling in this Court to use as *res judicata* in the other cases." (Mot. at 10.) In its response, Universal also accuses Pike of "procedural gamesmanship," (Resp. at 1), and argues that the Court should retain jurisdiction because none of the other proceedings are "parallel state proceedings" and that the factors articulated by the Third Circuit Court of Appeals in *Reifer v. Westport Insurance Corp.*, 751 F.3d 129 (3d Cir. 2014), weigh in favor of exercising jurisdiction, (*id*. at 11 – 17).

## II

### A

The Declaratory Judgment Act provides in part that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). The Act "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)).[1]

---

[1] The Court has jurisdiction under 28 U.S.C. § 1332(a)(1). The parties are diverse and the amount in controversy exceeds the sum of $75,000. "In actions seeking declaratory or injunctive

Actions seeking only declaratory relief are discretionary "[r]ather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,'" *Reifer*, 751 F.3d at 139 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)), and courts may "abstain from entertaining [them]," *Allied World Specialty Ins. Co. v. Indep. Blue Cross*, No. 17-1463, 2017 WL 4922177, at *2 (E.D. Pa. Oct. 31, 2017) (citing *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 (3d Cir. 2017)).[2] "The central question is whether the controversy may 'better be settled' in the state court[,]" *United States v. Pa. Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)), and courts are to be "governed by 'considerations of practicality and wise judicial administration[,]'" *Reifer*, 751 F.3d at 139 (quoting *Wilton*, 515 U.S. at 288).

Though the court's discretion is "substantial," it is nonetheless "bounded and reviewable." *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 140). The Third Circuit has established a non-exhaustive list of factors that are to be considered when deciding whether to exercise jurisdiction over declaratory judgment actions. Courts must first

---

relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333, 347 (1977)). In *Manze v. State Farm Insurance Co.*, the Third Circuit held that on a motion to compel arbitration, the court "should look through to the possible award resulting from the desired arbitration" to determine the amount in controversy. 817 F.2d 1062, 1068 (3d Cir. 1987) (quoting *Davenport v. Proctor & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957)); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (same). This principle has been extended to suits seeking to enjoin arbitration. *See Webb v. Investacorp, Inc.*, 89 F.3d 252 (5th Cir. 1996). In the underlying dispute, Universal has claimed damages in excess of $1.4 million. (*See* Resp. Ex. A, at 3.)

[2] "[T]his discretion is 'unique and substantial' and is an exception to the otherwise 'virtually unflagging obligation' of federal courts to 'exercise the jurisdiction conferred on them by Congress.'" *Kelly*, 868 F.3d at 281 n.5 (quoting *Wilton*, 515 U.S. at 284, 286). Courts, however, do not have the same open-ended discretion to decline jurisdiction in declaratory judgment actions when the issues include "federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity or the inadequacy of the state proceeding[.]" *See Reifer*, 751 F.3d at 140 n.12. None of these exceptions apply to this case.

4

consider the factors discussed by the Supreme Court in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and determine whether there is a parallel state proceeding. *See Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 144). This is a significant, though not dispositive, factor: "'the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction,'" while "the existence of a parallel state proceeding 'militates significantly in favor of declining jurisdiction.'" *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 144–45).

State court proceedings are parallel if, at the time the federal court is deciding whether to abstain, there exists "substantial similarity in issues and parties between contemporaneously pending proceedings." *Kelly*, 868 F.3d at 284. Germane factors include "the scope of the pending proceeding[,] the nature of the defenses open there" and whether necessary parties have been joined. *Brillhart*, 316 U.S. at 495; *Kelly*, 868 F.3d at 284. However, "'[p]roceedings are not parallel merely because they have the potential to dispose of the same claims[,]'" *Scottsdale Indem. Co. v. Collazos*, No. 16-8239, 2017 WL 4711451, at *2 (D.N.J. Oct. 20, 2017) (quoting *Kelly*, 868 F.3d at 283); in other words, the potential for the issues raised in the declaratory action to arise in the state action is insufficient, *Kelly*, 868 F.3d at 285.

B

After determining whether there is a parallel state court proceeding, courts should give "meaningful consideration" to the following factors to the extent they are relevant:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

5

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Kelly*, 868 F.3d at 282–83 (quoting *Reifer*, 751 F.3d at 146). If the court concludes that a parallel state proceeding does exist, it must ensure through "rigorous" analysis that opposing factors outweigh the existence of the state court proceeding before exercising jurisdiction. *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 145).

III

A

The action pending in the Montgomery County Court of Common Pleas is a parallel state proceeding. Universal and Pike, the only parties to this action, are both parties to the Montgomery County case. (*See* Am. Compl. at 12.) The only issue here—the enforceability of the arbitration provision—is currently before the state court where Pike has contended that Universal failed to comply with Article 11 and Universal contends that Article 11 is void and unenforceable. This is not a case in which the enforceability of the arbitration clause "eventually could arise in [the] underlying state [] action[,]" *Kelly*, 868 F.3d at 283; the issue has already been raised and the common

6

pleas court will need to rule of the enforceability of Article 11 before proceeding to the merits.

Universal's arguments to the contrary are unavailing. It contends that its complaint in Montgomery County "does not concern the same parties or present identical questions of law" because it raises "substantive liability questions . . . against both Pike and Marist." (Resp. at 12–13, 14.) First, the mere fact that there is an additional party (Marist) in the Montgomery County case is immaterial. The relevant question is whether the parties in the declaratory judgment action are also parties to the state court action and can thus represent their interests there. *See Kelly*, 868 F.3d at 284 n.8 ("Strict identity between parties and claims is not necessary for pending proceedings to be substantially similar, . . . '[s]ubstantial similarity' only means that the parties involved are closely related and that the resolution of an issue in one will necessarily settle the matter in the other."). Such is the case here.

Second, Universal focuses only on the *causes of action* asserted in its complaints to argue that the issues presented are not similar. (Resp. in Opp. at 14.) This disregards the Supreme Court's explicit guidance to consider both claims and defenses when assessing the similarity of the issues presented. *See Brillhart*, 316 U.S. at 495. Pike argued that the Montgomery County case should be dismissed because Universal failed to comply with Article 11. In response, Universal amended its complaint to allege that "Article 11 . . . is unconscionable and against public policy, and therefore, unenforceable." (Reply Br. at 4, ECF No. 13; Mot. at 12.) The only issue before this Court is also before the common pleas court.

B

None of the remaining *Reifer* factors weigh in favor of exercising jurisdiction, let alone outweigh the strong presumption in favor of declining jurisdiction in light of the parallel Montgomery County proceeding. Factor eight is irrelevant and Universal acknowledges that factors two and three are, at best, neutral. (*See* Resp. at 17.)

Universal contends that factor one weighs in favor of exercising jurisdiction because this Court is in a "unique [position] to resolve this ancillary dispute in an efficient manner[.]" (Resp. at 15.) Not so—again, the only issue before this Court must be decided in Montgomery County before the court there can even address Universal's claims against Pike. While a declaration by this Court would resolve uncertainty with respect to enforceability of the arbitration clause, the Montgomery County court is not only equally positioned to resolve that uncertainty, but is also in a positon to resolve the entire dispute between the parties. This factor thus weighs in favor of declining jurisdiction, as do factors four, five and six (remedies are available in state court, the presence of the same issue counsels restraint, and efficiency dictates duplicative litigation be avoided).

Factor seven is of particular relevance to this case. Both parties argue that the other is engaged in gamesmanship. Pike claims that Universal's initiation of this case and removal of the Monroe County action (the following day) indicate "procedural fencing." (Mot. at 12.) Universal, on the other hand, accuses Pike of starting the race for *res judicata* by filing the Monroe County action and argues that a declaratory judgment by this Court is the only way to prevent Pike from "being rewarded" by its conduct. (Resp. at 16.) In the Monroe County case, now in federal court, the judge

recently denied Universal's motion to dismiss or abstain pending resolution of the Montgomery County action, or to transfer the case to this Court (Mot. at 6 n.1), in part due to Universal's gamesmanship. (*See The Pike Company, Inc. v. Universal Concrete Products, Corp.*, No. 17–6365 (W.D.N.Y. Jan. 8, 2017), DKT No. 25.) While it appears that each party is attempting to use the procedural rules to gain the upper hand over the other, the Monroe County case is ultimately another battleground on which these parties are waging their dispute. This case was the third (if not the fourth)[3] action to be filed between these parties related to the Marist project and is being used "as a means to provide another forum in a race for *res judicata*." *Kelly*, 868 F.3d at 283 (quoting *Reifer*, 751 F.3d at 146). For that reason, this factor weighs in favor of declining jurisdiction.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] An additional lawsuit involving the Marist project, filed by another subcontractor, is currently pending in state court in Dutchess County, New York. (Mot. at 6–7.) In that case, Universal has asserted cross-claims against Pike for breach of contract. (*Id.*)